IN

# THE SUPREME COURT

OF

## THE STATE OF MISSOURI,

MARCH TERM, 1862, AT ST. LOUIS.

---

JOHN S. MCCUNE *et al.*, Appellants, v. BENJAMIN O'FALLON *et al.*, Respondents.

*Survey.*—The confirmation of a common field lot by virtue of the act of Congress of April 29, 1816, is a complete grant from the date of the act, and a survey is not required to fix the location and vest the title to the specific tract confirmed.

*Limitations.*—The statute of limitations in favor of an adverse possession of a field lot confirmed by the second section of the act of Congress of April 29, 1816, commences to run from the time of possession taken and before a survey of the claim by the United States. (Aubuchon v. Ames, 27 Mo. 98; St. Louis University v. McCune, 28 Mo. 481. Affirmed.) Query, before survey, how can the proper location of lines be determined ?

### *Appeal from St. Louis Land Court.*

This was an action of ejectment to recover possession of a narrow strip of land on the northern side of a common field lot in the Grand Prairie, confirmed to Francis Leschappelles, Leg. Rep., by act of April 29, 1816, and surveyed as survey

2—VOL. XXXII.

No. 1592, in 1838.   The defendant claimed title under an adverse possession for more than twenty years, under the confirmation of an adjoining common field lot to Jacques Labbé's L. R., which was also surveyed in 1838, as survey No. 1587.   The titles of the parties to their respective field lots were admitted.

Both confirmations, *in terms*, required survey.   The report of Recorder Bates annexes to each the order "*to be surveyed.*"

The instructions given are set out in the opinion.   The plaintiff asked and the court refused the following instructions:

2. The defendants claiming title under the confirmation to Jacques Labbé and survey No. 1587, any possession by said defendants over the line of their confirmation will not be adverse to the plaintiff claiming under François Leschappelles' L. R. survey No. 1592 until a survey was made by the United States marking out the dividing line between the confirmations of the plaintiff and defendant respectively.

3. The United States survey No. 1592, read in evidence by the plaintiffs, was made by the United States in the year 1838, and said survey first definitively located the lines of the lands between the adjoining proprietors claiming the Leschappelles and the Labbé tracts respectively; and possession by the defendants and those under whom they claim under the confirmation to J. Labbé's L. R. over the lines of the tract surveyed for F. Leschappelles' L. R. by survey No. 1592, although continued for more than twenty years prior to the commencement of the suit, was not adverse to the plaintiffs and those under whom they claim until said survey was made by the United States in 1838, and the defendants have shown no defence to the plaintiffs' action, under the statute of limitations, by virtue of such possession over the lines of the Labbé and within the line of the Leschappelles survey.

4. If the jury believe from the evidence that the defendants claimed title to part of survey No. 1587 under the confirmation of J. Labbé, and their possession had extended over the line before the survey was made by the United States for

the plaintiffs by survey No. 1592, then said possession was not adverse to the title of plaintiffs claiming under F. Leschappelles, as it was a mistake as to the true dividing line between the parties claiming under Labbé and Leschappelles respectively.

*Whittelsey*, for appellants.

There is no dispute as to the titles, nor as to the fact of actual possession. The inquiry therefore is into the defendants' adverse intention.

I. The confirmation carrying with it a condition that it should " *be surveyed*" until that survey was made, no title passed to any definite tract of land against which prescription could run.

The Supreme Court of the United States, in Jourdan v. Barrett, 4 How. 169, 185, say : " Having the power of disposal and protection, Congress alone can deal with the title, and no *State law*, whether of *limitations* or otherwise, can defeat the title." This principle was again asserted in a different form in Bryan v. Forsyth, 19 How., 334, 336, 338, which was a case of a confirmation of a town lot, by act of Congress upon the report of the register of the land office. Act passed March 3, 1823. The survey was made by the United States in 1840. The court say " the act of 1823 conferred on the grantee an incipient title, and reserved to the executive department the authority to settle the boundaries by actual survey," p. 336. " After that (that is, the survey in 1840), those claiming under Bogardus held the position of one who claims protection by the act of limitations under a younger patent against an elder one," p. 338. (Cabanné v. Lindell, 12 Mo. 184, as to the necessity of survey ; Stanford v. Taylor, 18 How. 409, 412 ; West v. Cochrane, 17 How. 403 ; Fenn v. Holmes, 21 How. 481 ; Ledoux v. Black, 18 How. 473 ; Cousin v. Black, 19 How. 202, 210 ; Ballance v. Papin, 342.)

II. The court erred in giving the instruction for defendant No. 3, and in refusing that of plaintiff No. 4, as to the

question of mistake or want of design of defendants in taking possession, and as to the burden of proof.

*a.* As a matter of fact, defendants claimed only under Labbé, and supposed themselves to be within the lines of the tract confirmed to him. Until the survey was made by the United States, how could the location of the true line have been determined?

*b.* As a matter of fact, the defendants do not claim title to the strip sued for under the United States—the source of all title; they do not claim under survey 1592, which describes the land, but under Labbé; their possession, therefore, was not adverse. (Jackson v. Porter, 1 Paine, R. 466.)

Possession *per se* is evidence of no more than the mere fact of the present occupation by right. It is not possession alone, but that it is accompanied with the *claim of the fee*, which, by construction of law, is evidence of such estate." (Brown v. Gray, 3 Greenl. R. 226.) Possession by mistake will not work disseisin. (5 Greenl. R. 240.)

*c.* The court should have said, as a matter of law, that the survey showed the true lines, and that until it was made there could be no mistake shown, nor intention to trespass proved. (Menkens v. Blumenthal, 27 Mo. 198, 204.) " This line was, as subsequent events (the survey) have shown, a mistake. The survey of the lots has changed this division line, but has given to each a full lot." (Angell on Lim. 464.) The inquiry is as to the intent to usurp possession. " In legal language, the intention guides the entry and fixes its character." (Bradstreet v. Huntington, 5 Pet. 440; Ewing v. Burnett, 11 Pet. 41.)

*Krum,* for respondents.

I. The leading question in this case is, whether there can be an adverse possession under a confirmation made under the act of Congress, approved April 29, 1816, until there has been an approved survey of such confirmation. This has been determined in the affirmative by this court in Aubuchon v. Ames, 27 Mo. 89, and St. Louis University v. McCune, 28 Mo. 481.

This case was tried in the court below in view of these decisions, and the facts bring the case clearly within the rule laid down by this court in the cases referred to. The court below, at the instance of the defendants, declared the law to be that twenty years' uninterrupted possession under a claim of title was adverse, unless such possession was without design or by mistake, and the burden was on the plaintiff to show such mistake, &c. The whole question relating to the possession, its duration, and whether it was by mistake or not, was fairly left to the triers of the fact.

I shall not argue anew the question determined in the cases cited above, as I assume the court will adhere to its ruling.

II. There was a practical designation or location of the true dividing line by the parties claiming respectively under Leschappelles and Labbé.

This is shown very clearly by the evidence presented in the record—the ditch—the fence—the claimants on either side working the land up to the ditch for a long series of years without question or dispute. There could have been no mistake about the possession of the defendants and the parties under whom they claim.

That parties by their own acts may designate and particularly locate lines, see the rules laid down in the cases of Biddle v. Mellon, 13 Mo. 335; Joyal v. Rippey, 19 Mo. 660; Taylor v. Zepp, 14 Mo. 482; Rockwell v. Adams, 6 Wend. 467.

BAY, Judge, delivered the opinion of the court.

The main question presented by the record in this case is, whether there can be an adverse possession of a confirmation under the act of Congress of April 29, 1816, until after a government survey thereof. The property in controversy is a narrow strip of land about fifteen feet in width, more or less, by fifteen arpens deep, and is in the northern part of a tract of one and a half by forty arpens in the Grand Prairie common fields of St. Louis, confirmed to the legal represen-

tatives of François Leschappelles under the act of Congress of 1816. Plaintiffs claim title under this confirmation. The United States survey was made in 1838, and approved March 2, 1857. This suit was instituted on the 29th December, 1856.

Defendants claim title under a confirmation to the legal representatives of Labbé under the act of 1816, and the question in controversy relates to the boundary line between the two confirmations. The defendants in their answer allege that they and the parties under whom they claim have been in the continued and uninterrupted adverse possession of the premises in dispute under a claim of title for more than twenty years next before the institution of this suit. Upon the trial below, defendants gave evidence tending to prove that they and the parties under whom they claim had been in open, notorious and uninterrupted possession of the land in dispute, claiming title thereto under Labbé for more than twenty years prior to the institution of the suit; that the land in dispute was enclosed by Henry M. Shreve (under whom defendants claim) as early as 1834; that there was an old ditch along the south side of the land, and along that ditch Shreve or Collet (from whom Shreve derived his title) put up a permanent fence, which extended to the west end of the field lots, and which was made more than twenty years before the commencement of this suit, and has ever since been kept up; that locust, cotton-wood and other trees had grown up along said fence from twelve to eighteen inches in diameter. They also gave evidence further tending to prove that Messrs. Moore (under whom plaintiffs claim) possessed and cultivated the land along on the south side and up to the said fence of Shreve as early as the year 1834, and continued so to possess and cultivate many years afterward. They also gave evidence tending to prove that the fence and possession of Shreve were conspicuous and readily seen, and that the land he claimed could be readily identified. Upon this state of facts, the court gave to the jury the following instructions:

"If the premises sued for are within the lines of the tract of one and one-half arpens' in front by forty arpens in depth, confirmed to François Leschappelles, or his legal representatives, as surveyed by the United States, as shown by survey No. 1592, read in evidence by the plaintiffs, then the plaintiffs have shown a legal title to said premises and are entitled to recover, if the jury believe the defendants to have been in possession of said premises at the commencement of this suit, 29th December, 1856, unless the jury believe as in the instruction given for the defendants, numbered 3," which instruction, No. 3, is as follows:

"If the jury find from the evidence that the defendants, and those under whom they claim, have held uninterrupted possession of the land in question for twenty years prior to the institution of this suit, claiming title thereto, such possession is adverse, and the jury should find for the defendants, unless the plaintiffs have proved to the satisfaction of the jury that such possession was taken by mistake, or without design on the part of the defendants, or those under whom they claim, to hold said land against plaintiffs; if the true line between Labbé and Leschappelles' tracts should, when ascertained, include the land so taken possession of within the Leschappelles tract, and the burden of proving such mistake or want of design rests upon the plaintiffs."

The plaintiffs then asked for several instructions substantially declaring that the possession of defendants, and those under whom they claim, although continued for more than twenty years prior to the commencement of the suit, was not adverse to the plaintiffs and those under whom they claim, until after the United States survey (1592) made in 1838, which the court refused to give. In support of the proposition contended for by the appellants, we have been referred to several cases decided by the Supreme Court of the United States, and particularly to the case of West v. Cochran, reported in 17th Howard, 403, but we are unable to see the analogy between that case and this. In West v. Cochran, plaintiff claimed under Brazeau, who had a confirmation by

the United States commissioners pursuant to the act of March 1807. It was an unsurveyed concession surrounded in part by public lands, and in other parts by the vague and unlocated claims of others, so that a government survey was indispensably necessary to fix and locate the grant. The act of 1807, moreover, required that those vague and indefinite concessions should be surveyed under the direction of the surveyor general, whose duty it was to transmit plats thereof to the recorder, and also to the secretary of the treasury, and thereupon the claimant received a patent certificate. The act furthermore provided that the claimant should be confirmed in what should be designated by a survey made under the authority of the United States, according to the direction of the board of commissioners, and the court held that until such survey was made the plaintiff's title attached to no land, nor could a court of justice ascertain its boundaries, as this power was reserved to the executive department of the federal government.

The case under consideration is very different, for both the confirmations under Leschappelles and Labbé are under the act of 1816, an act totally different in its terms from the act of 1807. We have here, moreover, a fixed, certain and definite boundary line adopted and acquiesced in by both parties and those under whom they claim, since 1834, recognized by all parties, and possessed and cultivated by the respective claimants up to the fence, without any dispute or controversy respecting the correctness of the line. But the same court immediately after, in Stanford v. Taylor, 18th Howard, 409, declared that the law was settled, that where there is a specific tract of land confirmed according to ascertained boundaries, the confirmee took a title on which he could sue in ejectment. The same doctrine is laid down in Bissell v. Penrose, 8th Howard, 317. But when the claim has no certain limits and the judgment of confirmation carries along with it the condition that the land shall be surveyed, then the title attaches to no land until such survey is made.

The question in this case, we think, has been definitely settled by this court in Aubuchon v. Ames, 27th Mo. 98, and St. Louis University v. McCune, 28th Mo., 481. In Aubuchon v. Ames, the court held that where a field lot, confirmed by the second section of the act of April 29, 1816, has a definite and certain location, the statute of limitation will run in favor of an adverse possession prior to a survey by the United States.

In the ·case of the St. Louis University v. McCune, the controversy was respecting a part of the narrow strip in dispute here.

We see no reason to depart from the doctrine laid down in these cases. Judge Bates and Judge Dryden concurring, the judgment of the court below will be affirmed.